Appellant, Ms. Wicks for the Appellant-Cross-Appellee, Mr. Jones for Appellee-Cross-Appellant-USA and Ms. Bates for Appellee-Cross-Appellant-USA. May it please the Court, Jennifer Wicks on behalf of Mr. Haight, I would like to reserve five minutes for my rebuttal argument. I would like to start with the request for continuance by the defense. I do, quite honestly, think it was an abuse of discretion for the Court to deny the motion, given the procedure that had occurred, which was counsel had relied on the Court, albeit provisionally, but coming out with suppressing the evidence that was Mr. Haight's alleged writings back in February. And the defense counsel had clearly relied on that until the Court essentially reversed itself in May. Counsel provided ample reason, her trial schedule, the steps involved in locating expert, which she had done, trying to find the materials for the expert to evaluate against the writings. I think it's a little different than the cases having to do with challenging the government's expert when they're, I think in those types of cases, the government has provided notice that we're using this expert. Here, the government didn't have an expert. This was essentially a defense, though. Clearly, if these writings are not written by Mr. Haight, that's a complete defense and a proper reason to even exclude the writings. But what's the evidence of prejudice here? Is there any reason to believe in the evidence that you proffered that it wasn't his handwriting? Did anybody testify that it wasn't his handwriting? No. Do you have any reason to think that a handwriting expert would say it wasn't his handwriting? I think given the proffer of defense counsel that she had consulted with the expert and was finding other samples... But there wasn't a proffer that the expert preliminarily thought it wasn't his handwriting or anything like that. The only evidence we have is it's found in his girlfriend's backpack that his employment papers are with it and that it uses his name constantly and his location. So maybe it would have been good, and certainly a judge could have granted a continuance, but at this stage, you have to show prejudice as well as some kind of error. Normally in these circumstances, the defense counsel presents some reason why, other than maybe it will happen and maybe it won't, that the expert would be helpful. And I think the issue, though, is the defense counsel is entitled to the time necessary to determine that. And she had been, I think, remarkably diligent since May, given her schedule, in locating an expert, speaking with the expert, and then working on gathering the materials that that expert wanted. I agree she did not proffer that there was any preliminary finding, but there were clearly steps of evidence that she needed to procure. And I think our backup argument is that we don't have to show prejudice at this point regarding the ineffective claim. And I think, you know, my other concern is this case... Why don't you have to show it? I thought the Strickland test requires... Well, because I'm asking for a remand in order to show that. Right, but it requires both deficient behaved conduct and prejudice. And we do remand if there's even some good reason to think that there would be prejudice, but you haven't provided any at all. Well, I think the issue is, I think it's deficient for counsel not to have challenged that. I think getting an expert and examining the evidence in the almost 18 months that the case was pending before the trial, I think proficient counsel would have done that, to figure out, is this really Mr. Haight's writings or not? That cuts exactly against the argument you just made, which was that she was diligent, working really hard since May, etc. Which is your position? Well, I do have both positions. The second one is my alternative position. But I think in the first, when the court has ruled that that evidence isn't coming in, then you're saying, okay, I have a trial, but I don't have this evidence. And so if the court, I think there's two ways to look at it. One is how long the case was pending, what would proficient counsel have done? But then when you're looking at the motion to continue, the court has to look at, procedurally, where are we in the case? And the court ruled in February that that evidence wasn't coming in. And so then for counsel to rely on that, I think is reasonable under those circumstances. But if you're looking at what would counsel do in this case right from the beginning when you have that evidence, I think proficient counsel would have worked before then to figure out, is there a way that I can challenge and just completely knock out this evidence? Because if it's not Mr. Haight's writings, then I don't have to worry about that. On the question of whether there was kind of a surprise in May when the district court ruled that the evidence was going to come in, at what point had the government invoked the automobile exception as a basis for introducing the evidence? I'm sorry? At what point had the government introduced the automobile exception as a basis for introducing the evidence? That was in March? They had filed a pleading between – yeah, I think their pleading was filed in March after the February hearing. They were given time to file further submission. And based on that, the government – the court sort of then almost again provisionally said, well, you can file something if you want, but given they're in May, he said to the defense, you can file something if you want, but I'm essentially reversing the decision that I made in February. But it was based on an argument that had been raised in March, is that right? I believe so, Your Honor, yes. But I think – And defense counsel didn't respond to that argument, correct? Defense counsel had not filed anything, yes. And, you know, given – I think it's unclear to me why the government hadn't raised that before the motions hearing in February. And I certainly think it's – we're not challenging the court's decision. I think it was a – I think that is the law and that should have applied to the facts of the case. And considering that law, I think that strengthens my argument on the ineffective claim because proficient counsel would have considered ahead of time if that – if the motion to suppress would really have won the day. And – Right. I guess I was raising it with respect to the continuous claim, and it just gets back to the notion that these are somewhat at cross-purposes. But with respect to the continuous argument, if that basis for admission hadn't come up until March and there was no response to it, then it seems like it might have been apparent as of March that the evidence was going to come in because the out-of-the-veil exception applied. I think it may have been. I think in defense counsel's mind, the issue changed in May when the court made that decision. And she made every effort at that point to locate the expert, to do the investigation, and try to gather the materials for that expert. I think the court made a decision in February that he didn't want to continue the trial absent some compelling good cause. But I think when you're looking at the potential prejudice at that point to Mr. Haight in defending his case, he didn't even consider a brief continuance. He didn't inquire as to how much additional time do you think you need to gather those materials. Well, he had already granted several continuances. He said counsel was very experienced. There had been enough time, right? Right. But I think the problem is regardless of her experience, there were steps that needed to be taken to procure that evidence. And so it's not something that would rely on counsel being experienced in meeting an argument in court or a compelling cross-examination. It was actual work that needed to be done outside of court before the trial and with notice to the government if she was going to be calling that expert. Moving on to the identification issue, while I see government's argument that there was a statement, an opening statement that could be interpreted to be talking about that identification, I think as counsel made very clear in the record, the first identification by Proctor was not one that she had been provided notice of. And I think the record is very clear that she indicates when this is brought up during the police officer's testimony that this was not something that she was put on notice of. I'm sorry, this is the part I didn't understand about her not having notice. What does that mean when she said she didn't have notice? I mean, it's surprising that I think it's part of the mysteriousness of the procedure is that there was nothing in the paperwork, there was nothing in the discovery that indicated that this first identification procedure had taken place. So why isn't there an argument here about government failing to produce discovery? You don't have that argument at all, like a Rule 16 violation. She didn't make that argument below, and I think that is a potential argument that could have been made, but I think the problem is, well, the issue that's raised is when the witness is not, when there hasn't been an opportunity for cross-examination, the witness, the government appears to be asking the witness about this issue, and the witness denies it happened, and says, no, the identification is this other one, which is what I'll call the second one, from the cell phone. So at that point, if this... Well, she did then, and so we have the statement in opening, and we have this muffed identification on direct, but then defense counsel cross-examined and asked about an identification, and the person said, well, he showed me the mug shot. That was obviously the identification we're talking about, and defense counsel quickly got away from that, not wanting the jury to know that there was a mug shot, which would have suggested a prior conviction. So there was that opportunity there during cross, and not followed up, right? I thought it was very clear that she only thought there was one identification, and that she, while he may have been referring to it, the mug shot, I took it that defense counsel thought that he was, when we're talking about Proctor, that Proctor only thought that there had been one identification procedure, that it was the one done after Mr. Haight. That was with a telephone, right? Yes, and that's the one where he... I read it differently. I read the mug shot as being referred to the first. Was there any reason she couldn't have recalled the witness then? I think that was offered, and she declined to do that. And I think the problem, while I don't think that meets the requirement of the rule, because I think you're taking out some of the force of cross-examination. If then you're recalling him, it's not in the context of the cross-examination. It's sort of a separate cross-examination. It puts emphasis on something that really there shouldn't be emphasis on. So that doesn't sound like a hearsay problem. A hearsay problem is resolved by 801 and the availability. This sounds like a different problem. Government's failure under Rule 16, surprise, or something like that. But that's not the argument you're making here. You're making a, this is hearsay, an admissible hearsay argument. That one seems to be conquered by the fact that the witness is available and, as you point out, remained available even if it wasn't in as good a posture. Well, I don't think the rules of evidence say, okay, well, you can do something after the government has done this, but then it makes it admissible. The government, the rule is that the witness is available and has been cross-examined about it, and then you can seek to admit this other evidence. It's the government making the rules about what witnesses we're going to call, what we're going to ask them about. And so then putting the onus on defense counsel, well, if you're going to insist on that, then we can recall the witness. The witness has been called. I don't think your position is that there, in fact, has to have been a cross-examination. As long as there was an opportunity to give cross-examination, if somebody decided for whatever reason, tactical reasons, not to do it, I imagine that that would be enough, no? Well, I think that would be enough. I think the problem here was the witness was not confronted with it on direct, and so defense counsel— Well, so if it comes up in the cross, and just getting back to the exchange earlier about what happened on the cross, it's on Supplement Appendix 295, and it looks like they're talking about the initial picture. They're initially talking about a picture. I think it's the one that comes from the phone, and the witness testifies that one right there looks cloudy. And then the counsel says, okay, and so did you say, well, could I see a different picture of the guy? So they're talking about a different picture, and then the answer is they showed me another picture. Okay. They showed me his mugshot. So at that point, the mugshot is a different picture. But I think the problem is that's not necessarily referring to what the officer is claiming. Yes, the witness is saying, well, they showed me another picture, but he's not— since he's already said, no, he didn't show me one before, why would defense counsel think, oh, well, now he's changed his mind and now there was one before? Because the witness just said that there was one before. So isn't that the occasion? Doesn't that show that there was an opportunity for cross-examination with respect to earlier picture because it specifically came up and then the defense counsel made a decision not to pursue questioning about that? Well, I think he says they showed me a picture. Maybe I'm not recalling the exact answer, but my recollection from what the court is saying, he's not indicating that it's the earlier identification that he just on direct said didn't happen. He is intending, yeah, they showed me another picture, but he's not saying it was earlier in time. I mean, there's plenty of time between that point and trial that they could have shown him other pictures. I would like to reserve some time to respond to the government's argument. Thank you. Good morning. May it please the Court. Luke Jones for the United States. I just reserve seven minutes for my colleague to argue the cross-appeal in this case. As to the trial issues, this Court should affirm, because appellant has failed to meet his burden as to each of his particular claims. I'll start, as appellant did, with the issue of the continuance and the allegation of ineffective assistance. It's clear on this record that the district court did not abuse its discretion in denying a fourth continuance. Turning to the ineffectiveness claim, there's no basis for a remand here where appellant has failed to demonstrate any prejudice. And I think there's three important points on prejudice. Why do you say that when the writings were relied on by the government in the closing? In fact, it's the very end of the rebuttal, which suggests that it's important to the government. It's the last thing they want to be heard, and they go on. The counsel went on at some length. What these writings do show you is that he possessed the drugs, the guns, the marijuana that were found in the apartment. It's the defendant talking about what he is accused of in doing in this very case. And so if the writings were not his, that sounds like there's prejudice or potential prejudice. I think even if you assume best-case scenario for the appellant, which is that appellant can nullify the probative value of these writings, I think the government still wins on the prejudice prong. But setting that aside, I think the initial analysis is a point which Judge Garland mentioned, which is that it's entirely speculative that an expert would have been able to have more time given to defense would have helped. That's different from the prejudice point, right? Well, I think it goes to deficiency and to prejudice, because the appellant has to show real probability that the outcome would have been different. And not only is it speculative that an expert would have made a difference, but it's also quite dubious in light of the evidence suggesting that these were, in fact, appellant's writings. They're found in the backpack. Do you think that's part of the prejudice prong? I guess it could be. I mean, if it's very unlikely you're going to find an expert to say this is not the writing. The problem, as always on this, which is why I don't like doing this, is we don't know what the counsel would say about what was going on. In other words, it could be, well, we talked to him. Well, it could be a lot of things. It could be. So we just guess on appeal, which is not a good thing. Well, I don't think this Court needs to guess for this reason, and this Court doesn't need to remand for this reason. Putting aside what might have happened and assuming for purposes of argument that best-case scenario, appellant is able to get an expert that says these aren't the writings. The writing's probative value is somehow nullified. Look at the impact of the writings on the case. I think that is a losing argument. That is, the jury is presented with language which the government is implying comes from the defendant, in which the defendant says, my name is Mr. Haight. I am the biggest drug dealer in the neighborhood. This is my neighborhood. I'm sorry, whether you mentioned that in your closing argument or not, that seems completely destructive of the argument, that I'm not a drug dealer and I don't deal drugs in the neighborhood. So your only hope is to argue that, is to rely on the lack of prejudice from an argument that if she had done what defense counsel now claims she should have done, it wouldn't have made any difference because it wouldn't have come out differently. But I don't understand the nature of the argument that when somebody announces, I am a drug dealer, that that doesn't matter in a case involving drug dealing. Well, it apparently didn't matter to the jury who acquitted Appellant on the charges with respect to the marijuana found in the backpack and the gun found at the residence. I bet you found that pretty surprising. But that doesn't mean that this didn't affect the jury. We don't have any way of knowing how this affected the jury or not. They did find him guilty of other drug dealing, right? Yes, but even if you assume the writings are quite probative in the government's favor, the court can still consider the strength of the other evidence. And if that evidence supporting the conviction with respect to the 50th Street Stash House is overwhelming, then it doesn't really matter how probative the writings were because the outcome would not have been different. So it's not surprising that you would have gone to that because that is the one place where you don't need to know anything about what a factual inquiry would have uncovered. Exactly. So let's just assume, and I know you don't agree with this, but let's assume that argument doesn't carry the day. And then what we're left with is trying to decide whether to resolve this on direct appeal or whether to do what happens in other courts, which is it gets resolved on 2255 or something. And with respect to that, how do we know with sufficient reliability that nothing would come up in a factual hearing? The whole problem here is that we don't have any record evidence about what the counsel was thinking or what could have potentially happened had an inquiry as to the handwriting sample been conducted. We just don't know. I'm not necessarily saying you would lose on that basis, but it seems like the conundrum that we face when we're trying to resolve this on direct appeals. We just don't know. Well, I think the court will frequently look to the strength of the other evidence, and that would be the inquiry that would have to be made and this court would have to determine that the strength of the other evidence was so strong that the writings, regardless of how strong they were, wouldn't have made a difference, and that would be a basis for affirmance without a remand. Here you have an informant who is familiar with the appellant, having known him for two months, met him on 12 occasions, multiple purchases of narcotics, his identification in court corroborated by his phone records. That's about the other evidence, right? Yes. So if we just assume that away, and I know you don't want to, but just for argument purposes, if we assume that away and we focus on let's just assume that one doesn't work and then we're trying to figure out whether to resolve this on direct appeal or remand for a factual inquiry, then does the idea that we don't yet know, it may be true that you could say, well, there's nothing that tells us that further analysis would have borne any fruit, because gosh, it looks like it's handwriting, so it seems totally speculative that this could have borne fruit, but that just seems, I don't, I'm not quite sure I follow that, because of course we'd have to engage in some speculation, but that's because we don't know, and so in that situation, how do we resolve it on that basis on direct appeal rather than remanding for an inquiry to know what we now don't know? Right. I think under that hypothetical scenario, the court would be in a position where it would have to remand unless it could reach the conclusion, which I think the court would urge, which is that defense counsel's inability or decision not to obtain an expert on this particular topic given the context of the case simply wasn't constitutionally deficient, given the broader sort of issues in the case, the evidence to which the defense needed to focus its resources, and not to repeat myself, but the speculative and dubious notion that an expert on handwriting would have helped here. So I think on that basis, the court not only could reach a decision, a conclusion, that the deficiency simply isn't here, even under the sort of best case scenario, but if the court's uncomfortable speculating in that regard, I think those same factors, the speculation and the dubiousness of the claim, do weigh on the prejudice scale in addition to the overwhelming evidence of guilt with respect to the 50th Street stash house. And I'll repeat, I think, contrary to Judge Garland's sort of inclination, that the acquittal on the marijuana and the gun on the other offense are strong evidence that these writings weren't overwhelming. I mean, for the same reasons they weren't improperly introduced under Rule 403, the jury clearly wasn't wowed by these writings to the point where they were willing to convict appellant of anything, any drugs that sort of were brought before them in court. So I think that combining that with the strength of the other evidence, the court can comfortably reach the decision that this wouldn't have made a difference, and under Strickland, the appellant simply hasn't met his initial burden that would justify a remand. If I can turn briefly to the other evidentiary issues, the district court did not abuse its discretion in introducing the out-of-court identification. I'm going to go back on that. Yes, certainly. Sorry. Doesn't the fact that it's a closed case on certain counts and the jury carefully weighted just underscore the importance of being sure and underscore that it wasn't overwhelming? Well, I don't think so for this reason. The evidence on the 50th Street stash house was very strong. I mean, independent identifications by people, phone records corroborating it, the phone found on the windowsill, the officer's identification of appellant jumping out of the window, contrast that with the evidence to the marijuana and the gun found on the Eastern Avenue apartment. It was relatively weak, to be sure. It was much weaker evidence. Appellant was much more difficult for the government to tie him to those items, although certainly the government urged the jury to do so. But we know from that, from the jury's result, that the writings weren't so persuasive or probative that they turned the jury toward a conviction on those counts. So I think the contrast between the two incidents and the mixed verdict speak more to the insignificance of the writings. It isn't to say they weren't probative. They were, and the government certainly emphasized that, at least in part. But here you had, you know, as the district court mentioned, even surprised that the government didn't make more of these writings during the trial. Unless there's more questions on that point. I'm sorry to interrupt. Thank you. And I do want to make sure I have enough time for my colleague to address the other points. So if I may, on the identification.  Yes, the ACCA. Let me just ask, hasn't your other colleague already said everything she has to say about ACCA? I would defer to her on that score. I think you can steal her time. Fair enough. Thank you, Your Honor. On the out-of-court identification, jumping to the punchline first, this fact was, frankly, entirely insignificant in the context of the evidence of the case. And so any error would have been harmless. But as Your Honor has indicated during your questioning, there was no mystery here as to what this out-of-court identification was, having been brought up during the opening statement during direct examination, in which it was clear the government was attempting to elicit that identification. And Appellant's Trial Counsel was able to succeed in eliciting that when Mr. Proctor, the informant, mentioned the mug shot. Even during the objection to Officer LeBue's testimony, in which he did describe the identification, Trial Counsel, and this is Supplemental Appendix 314, indicates to the Court the problem is Mr. Proctor has testified and said that he did not identify him, meaning Appellant, from the photograph. On direct, he was asked were he shown any photographs other than the cell phone photo, and he said no. Trial Counsel's representations throughout the case don't indicate any confusion or surprise with respect to this identification. And so for those reasons, it's clear that Mr. Proctor was available for cross-examination about the statement, whether or not Trial Counsel chose to do so. With respect to the admission of the writings, I would say that the District Court, again, did not abuse its discretion. The writings were properly authenticated, and the District Court carefully weighed the 403 appropriate value of the writings against the danger of unfair prejudice. And as this Court reviews it, the District Court did not commit any grave abuse with respect to that balancing test. Again, we'd argue that the writings were harmless for the reasons I stated in the context of the Strickland analysis. Unless there are further questions, we'd ask the Court to affirm on the trial issues. Thank you. If you have a few more words to say, Anaka, that you haven't already said, otherwise we'll just remember what you said. Thank you, Your Honor. The government maintains that a D.C. ADW should qualify as a violent felony for purposes of the Armed Career Criminal Act. The fact that it can be a felony should not change that analysis for the same reasons that the government has previously stated. And I'd like to note just a few additional points. The element requiring the use of a dangerous weapon necessarily requires the use of force. That's what this Court found in Redrick. That's what other courts have routinely found. And the fact that an ADW may be slightly more likely to be committed by way of poisoning than a robbery does not change that analysis. If the poison is used in a way that is likely to produce death or great bodily injury, violent force has been used. As Castleman instructed, it's not the act of sprinkling the poison. It is the act of employing the poison as a device to cause that harm. And that is the conclusion that many circuits have reached and we believe is the proper analysis here. To conclude otherwise would exclude, as this Court recognized, shooting someone with a gun because the act is simply the twitch of the finger that's required to pull the trigger. One additional point on the recklessness piece, Powell is being talked about as a case that is a reckless driving ADW, and I think that that's an unfair characterization of what is required to commit an ADW by way of using a car as a dangerous weapon. Powell was much more than reckless driving. It's driving the car in a manner where it is likely to produce death or serious bodily injury. It was in that case driving at 90 miles per hour through a tunnel, failing to slow down as the police thought that the driver would when there is traffic outside of the tunnel, and plowing the car into the back of what is an occupied car, a car sitting on the roadway. And that certainly involves a deliberate decision to place another in substantial risk of serious bodily injury or death as what resulted in that case. And so for all of these reasons, we believe that the judgment of the District Court should be affirmed with the exception that the case should be remanded for resentencing under the Armed Career Criminal Act. And I'll reserve just a few seconds for rebuttal. Thank you. Just to pick up on the point that the Court brought up, the rebuttal argument, well, going to the acquittals, I think it is not of any moment related to the writings that he was acquitted on conduct when he wasn't there. His girlfriend is seen walking out of the house with a book bag. It's in her possession. There's nothing about the marijuana that points that it must be Mr. Haight's. The issue is the writings are essentially a confession. If it's Mr. Haight, it's a confession about drug dealing. It's not specific to what's found in the house or found in the book bag. And clearly the jury could be thinking, well, he's not there. There's someone else that lives there. There's someone else that actually has put the stuff in the bag and is carrying it out of the house. So the jury could clearly be thinking, well, we don't know that it's not hers. Clearly the argument in rebuttal went to the conspiracy that he was charged with and the alleged drug operations on 50th Street. And I think it's telling that the government brought this up in rebuttal. It's telling that they didn't decide, oh, we don't need that. If the case was overwhelming, they wouldn't need that. If they had solid identification by the witnesses, they wouldn't need that. The fact is none of the identifications were perfect. All of the witnesses at some point or another sort of didn't. There was a problem. The proctor couldn't identify him, and Officer LeBue even sort of was sarcastic with him about his almost non-identification from the phone. The police officer was only 90% sure. The description that he gave of the person suspected to be Mr. Haight on that day was different than the person in the apartment. And the person in the apartment very clearly that night said, that's not Boo, that person doesn't sell drugs out of this apartment. So I don't think it's an overwhelming case. I do think that the evidence prejudiced Mr. Haight, and for the reasons stated today and in the brief, I do think the court should, at the least, remand for a hearing on the proffered expert testimony. As to the ADW, clearly the response to the government's first argument today, I think meets, in our pleadings, meets as to why ADW should not meet, does not meet the definition. There's no violent force required under the D.C. statute, and given the reckless intent, the mere reckless intent that's required, as indicated by the cases of Vines and Powell, we think that the court below made the correct decision in finding that Mr. Haight and his prior convictions do not meet the definition under ACCA. Other questions from the room? Thank you very much. I can't remember with appeals and cross appeals, do we have another statement here? In terms of the government's rebuttal, unless there are further questions on the ADW issue. Thank you. All right, we'll take this under submission. Thank you all. Thanks, everybody, for addressing the ACCA question today.
judges: Garland, Kavanaugh, Srinivasan